UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**PATRICIA GIBSON**,

    *Plaintiff*,

v.

**NORTHFIELD SCHOOL DISTRICT**,
*et al.*,

    *Defendants*.

No. 23-cv-21638

**OPINION**

---

**APPEARANCES**:

**Stephanie Renee Esrig**
SCHATZ, STEINBERG & KLAYMAN
1500 John F. Kennedy Blvd
Suite 1300
Philadelphia, PA 19102

    *On behalf of Plaintiff.*

**James R. Birchmeier**
**Edward Nicholas Romanik**
MADDEN & MADDEN
1891 State Highway 50
P.O. Box 582
Tuckahoe, NJ 08250

    *On behalf of Defendant Northfield School District.*

**O'HEARN, District Judge.**

**THIS MATTER** arises from Plaintiff Patricia Gibson's ("Plaintiff") fall in the parking lot of Northfield Elementary School and comes before the Court on Defendant Northfield School District's ("Defendant" or "District") Motion for Summary Judgment.[1] (ECF No. 39). The Court has jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. (*See* Compl., ECF No. 1; Disclosure Statement, ECF No. 5). The Court heard oral argument on October 22, 2025.

For the reasons that follow, Defendant's Motion is **GRANTED.**

I.   **FACTUAL BACKGROUND**

The facts set forth below are taken from Plaintiff's Responsive Statement of Material Facts Not in Dispute ("SOMF"), (ECF No. 42-1), and are undisputed unless otherwise noted.

On Saturday, April 9, 2022, Plaintiff was visiting a flea market at Northfield Elementary School with her daughter. (*Id.* at ¶ 1). She arrived at the school around 8:30 am and parked in the school parking lot. (*Id.* at ¶¶ 3–4). Plaintiff did not have any difficulty navigating the parking lot when she arrived. (*Id.*). She crossed the parking lot and then walked along a sidewalk into the school. (*Id.* at ¶ 6).

At around 2:00 pm, Plaintiff and her daughter decided to leave the flea market. (*Id.* at ¶ 5–6). In doing so, they did not use the sidewalk, and instead this time crossed the parking lot so that Plaintiff could put her purchases in her daughter's car. (*Id.*). Plaintiff was wheeling a case or school

---

[1] Defendant asserts that it has been improperly pleaded, and that its correct name is Northfield Community School Board of Education. For the sake of consistency, the Court will use the name as pleaded by Plaintiff.

bag as she walked. (*Id.* at ¶ 7). As they were walking towards the car, there were five other people walking in the parking lot near Plaintiff. (*Id.*). Plaintiff moved aside to let the people pass and fell to the ground. (*Id.*). The area where Plaintiff fell had an "indentation" in the asphalt around a storm water grate. (*Id.* at ¶¶ 9–10). The people for whom Plaintiff had stepped aside stopped and helped her to her feet. (*Id.* at ¶ 7).

Defendant is responsible for the care and maintenance of the parking lot. (*Id.* at ¶ 13). Pedro Bretones was the Superintendent of the District at the time of Plaintiff's fall. (*Id.* at ¶ 11). Bretones walked the campus "on a regular basis" and would make note of any issues or defects he observed.[2] (*Id.*). He was not aware of anyone else alleging to have fallen in the same area as Plaintiff and never received any reports of that area being unsafe or needing repair. (*Id.* at ¶¶ 12, 15). To the best of Bretones' knowledge, there were no reports of any injuries occurring in the area between 2020 and the time of Plaintiff's fall in April 2022. (*Id.* at ¶ 16). At some point in 2023, after Plaintiff's fall, the parking lot, or some portion of it, was resurfaced. (*Id.* at ¶ 14).

---

[2] While this fact is not in Defendant's SOMF, (ECF No. 39-2), there is no genuine dispute over it. It is instead contained in Plaintiff's Response to Defendant's SOMF. (ECF No. 42-1). The Court notes that Plaintiff's response does not fully comply with Federal Rule of Civil Procedure 56 or Local Civil Rule 56.1 as it contains numerous other facts beyond Defendant's stated facts, which should have properly been submitted as a counter-statement of material facts to which Defendant could have replied. Nevertheless, Defendant at argument did not contest this fact.

On this much the parties agree. Plaintiff further relies upon a report from an engineering expert, Timothy Sass, in which he opines that the area in which Plaintiff fell contained an "excessively steep slope" that can cause pedestrians to lose their footing.[3] (*See* Pl.'s Ex. H, ECF No. 42-13 at 5). Plaintiff also relies upon photographs, obtained from Google by her counsel, taken in 2018 and 2021 that purportedly show the same area in which Plaintiff fell, including the indentation, and argues they establish both actual and/or constructive notice and that Defendant's conduct was palpably unreasonable.[4] (*See* Pl.'s Ex. I, ECF No. 42-14).

---

[3] The Court notes that Plaintiff's expert report is not sworn under penalty of perjury and therefore ordinarily would not be considered on summary judgment. *See Snead v. Casino*, 700 F. Supp. 3d 203, 215 (D.N.J. 2023) (citing FED. R. CIV. P. 56). But because Defendant has raised no objection to the report and because the Third Circuit has noted that "evidence should not be excluded on summary judgment on hypertechnical grounds," *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989), the Court will consider the report as evidence for purposes of this Motion. However, expert reports relied upon at the summary judgment stage should be supported by an affidavit of the expert.

[4] Defendant does not address the photographs at all in its briefs. But at argument, Defendant disputed that Plaintiff has sufficiently established that the photographs show the area where Plaintiff fell or that they show the property in the same condition as the time of Plaintiff's fall. (Tr. at 6:25–7:4).

## II. PROCEDURAL HISTORY

Plaintiff commenced this lawsuit on October 30, 2023, asserting a single count of negligence under New Jersey law. (*See* Compl., ECF No. 1 at 3–5). Defendant answered on November 15, 2023. (ECF No. 6). Defendant then moved for summary judgment and dismissal of all claims with prejudice on March 19, 2025.[5] (ECF No. 39). Plaintiff filed her response in opposition on April 7, 2025. (ECF No. 42). Defendant replied on April 14, 2025. (ECF No. 43).

## III. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only if it will affect the outcome of a lawsuit under the applicable law" and a "genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party." *Young v. United States*, 152 F. Supp. 3d 337, 345–46 (D.N.J. 2015) (citations omitted). When the Court considers the evidence presented by the parties, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

"The moving party bears the burden of establishing that no genuine issue of material fact remains." *Id.* at 346 (citation omitted). The non-moving party's evidence does not need to be in admissible form to be considered on summary judgment, rather "the court need only determine if

---

[5] In her Complaint, Plaintiff brought claims against other defendants, including the City of Northfield, the City of Atlantic County, and the New Jersey Treasury Department's Bureau of Risk Management. (ECF No. 1). Defendant also asserted cross claims against these defendants in its Answer. (ECF No. 6). All these claims were eventually dismissed and only Plaintiff's claim against Defendant remains. (*See* ECF Nos. 10, 19, 21, 41).

the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial." *Fraternal Ord. of Police v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citation omitted).

## IV. DISCUSSION

The parties agree that this case is governed by the New Jersey Tort Claims Act, ("Tort Claims Act"), N.J. STAT. ANN. §§ 59:1–1 *et. seq*. To hold a public entity liable for a property defect under the Tort Claims Act, a plaintiff must show:

> (1) that the property was in a dangerous condition at the time of the injury,
> (2) that the injury was proximately caused by the dangerous condition,
> (3) that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred,
> (4) that either:
>     (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition, or
>     (b) a public entity had actual or constructive notice of the dangerous condition … a sufficient time prior to the injury to have taken measures to protect against the dangerous condition, and
> (5) the action the entity took to protect against the condition or the failure to take such action was palpably unreasonable.

*Charney v. City of Wildwood*, 732 F. Supp. 2d 448, 452 (D.N.J. 2010), *aff'd*, 435 F. App'x 72 (3d Cir. 2011) (citing N.J. STAT. ANN. § 59:4–2). "These elements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must fail." *Snead*, 700 F. Supp. 3d at 214 (quotation marks and citation omitted). "The requirements of the Tort Claims Act are stringent, and place a heavy burden on plaintiffs seeking to establish public entity liability." *Charney*, 732 F. Supp. 2d at 452–

53 (quotation marks and citation omitted). Thus, "immunity for public entities is the rule and liability is the exception." *Id.* at 453 (citation omitted).

Here, the parties dispute only whether the parking lot was in a dangerous condition at the time of the injury; whether Defendant's employees created the condition or Defendant had actual or constructive notice thereof; and whether Defendant's actions were palpably unreasonable. The Court will address each in turn. As explained below, the Court finds that while there may be a genuine dispute as to whether the parking lot was in a dangerous condition, Plaintiff has not produced sufficient evidence to create a genuine dispute as to whether Defendant created the condition or had actual or constructive notice of it. Moreover, even assuming the notice requirement is satisfied, the Court finds that no reasonable jury could conclude that Defendant's actions were palpably unreasonable even if Plaintiff's evidence is credited and all inferences drawn in her favor. Thus, Plaintiff's negligence claim fails as a matter of law and summary judgment for Defendant is appropriate.

### A. Dangerous Condition

Under the Tort Claims Act, a "[d]angerous condition" is defined as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *Fine v. City of Margate*, 48 F. Supp. 3d 772, 778 (D.N.J. 2014) (citing N.J. STAT. ANN. § 59:4–1(a)). A "substantial risk is one that is not minor, trivial or insignificant, and presents a more stringent burden than that of mere negligence." *Stewart v. N.J. Tpk. Auth.*, 268 A.3d 346, 354 (N.J. 2022) (quotation marks and citation omitted).

Defendant argues that the parking lot is only intended for vehicle use and it was not reasonably foreseeable that pedestrians, including Plaintiff, would be walking there. (Def.'s Mot.,

ECF No. 39-1 at 12–13). The Court easily rejects this argument. As Plaintiff puts it: "It is axiomatic that a parking lot will be traversed by both vehicles and the occupants of those vehicles as they come and go from the vehicles." (Pl.'s Opp., ECF No. 42-2 at 10). The Court agrees. It is undisputed that there were five other people walking in the same area as Plaintiff at the time of the accident. (ECF No. 39-2 at ¶ 7). That alone demonstrates that Plaintiff's conduct was "objectively reasonable from the community perspective." *Fine*, 48 F. Supp. 3d at 778.

The only other argument that Defendant raises in its brief is that Plaintiff should have anticipated some "declivities" and unevenness in the asphalt. (ECF No. 39-1 at 11). That is reasonable but begs the question as to whether the "declivit[y]" was of such magnitude that it could not have been anticipated by a pedestrian exercising due care. Plaintiff's expert's opinion that the steepness of the indentation in the asphalt posed a danger to pedestrians is unrebutted. (Pl.'s SOMF, ECF No. 42-1 at ¶ 9). Defendant's admission that a declivity existed and should be expected coupled with the Plaintiff's expert's opinion is sufficient to at least create a genuine dispute of material fact as to whether the parking lot was a dangerous condition. Because Defendant does not raise any other arguments with respect to the presence of a dangerous condition, the Court finds Plaintiff has established this element.[6]

---

[6] Defendant raises a new argument in its reply brief that Plaintiff was distracted and should have seen the storm grate and thus realized there would be an indentation. (ECF No. 43 at 5). This was not raised in the initial brief and the Court cannot consider it for purposes of this Motion. *See, e.g., Witt v. City of Vineland*, No. 20-14678, 2024 WL 1928213, at *6 (D.N.J. Apr. 30, 2024) (explaining that a moving party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief" (citation omitted)). Even if the Court were to consider this argument, it would nevertheless leave a genuine dispute of material fact as to whether Plaintiff exercised due care that a jury would need to resolve.

### B. Causation or Notice of the Dangerous Condition

To establish liability for negligence under the Tort Claims Act, Plaintiff must next show either that (a) "a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or" (b) the "public entity had actual or constructive notice of the dangerous condition … a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." N.J. STAT. ANN. § 59:4-2. Here, the Court finds that Plaintiff cannot show either.

Plaintiff first argues that Defendant created the dangerous condition when it repaved the parking lot before Plaintiff's fall. But the only evidence that Plaintiff offers to show that Defendant caused the condition is the fact that the "entire blacktop" was redone at some point in the five years before Plaintiff's fall. (Pl.'s SOMF, ECF No. 42-1 at ¶ 13; Pl.'s Opp., ECF No. 42-2 at 12–13). Plaintiff has produced no evidence that the repaving was done by an employee of Defendant, let alone that they were acting within the scope of their employment and that their acts or omissions, rather than natural causes over time, for example, created the condition that existed in the parking lot at the time of Plaintiff's fall. *See Polzo v. County of Essex*, 35 A.3d 653, 662 (N.J. 2012). The simple fact that the entire parking lot was repaved, without more, is insufficient and would be asking a jury to speculate as to whether the Defendant created the condition. Thus, Plaintiff fails to establish that Defendant created the condition or show a genuine dispute of material fact as to the first prong of this element.

Therefore, Plaintiff must show that Defendant had actual or constructive notice of the condition. A public entity is "deemed to have actual notice of a dangerous condition" if it "had actual knowledge of the existence of the condition and knew or should have known of its dangerous

9

character." N.J. STAT. ANN. § 59:4-3. It is deemed to have constructive notice "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." *Id*. "[T]he mere existence of an alleged dangerous condition is not constructive notice of it." *Fine*, 48 F. Supp. 3d at 781 (citation omitted).

Plaintiff relies heavily on the fact that Defendant had the parking lot, or some portion of it, repaved after Plaintiff's fall and that Bretones testified that the repaving was performed because there was a "depression" that "presented a falling or tripping hazard." (Pl.'s Opp., ECF No. 42-2 at 16–17.) Plaintiff's theory, evidently, is nothing more than if Bretones later knew that the area was dangerous and sought to have it fixed, he must have known about it before Plaintiff's fall. The problem with this theory (although not raised by Defendant) is that such evidence would be barred at trial, and thus at summary judgment, by Federal Rule of Evidence 407, which prohibits the admission of evidence of a subsequent remedial measure to prove "negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Courts "routinely exclude evidence of [subsequent remedial measures] to encourage people to take such measures whether or not they are at fault." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 415 (3d Cir. 2002) (alteration in original) (citation omitted); *see also Wurst v. City of Ocean City*, No. A-1104-16T2, 2018 WL 2140707, at *4–5 (N.J. Super. Ct. App. Div. May 10, 2018) (affirming a motion judge's decision in which the judge stated in dicta that evidence of a subsequent remedial measure could not be considered to prove actual or constructive notice under the Tort Claims Act); *Grabau v. Target Corp.*, No. 06-01308, 2008 WL 616068, at *2 (D. Colo. Feb. 29, 2008) ("[I]n a premises liability action use of subsequent remedial measures to prove knowledge of a dangerous

10

condition is exactly what the rule prohibits.").[7]

Plaintiff is thus left with relying on the three photographs of the area from 2018 and 2021 and argues that these are sufficient to create an issue of fact as to notice because it shows that the indentation existed for years before Plaintiff's fall. (*See* Pl.'s SOMF, ECF No. 42-1 at ¶ 9; Pl.'s Ex. I, ECF No. 42-14). As a preliminary matter, Plaintiff fails to provide sufficient evidence to even authenticate the photographs. "For photographs to be admissible at trial, they must be authenticated through 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Kovalev v. Lidl US, LLC*, 755 F. Supp. 3d 878, 890 (E.D. Pa. 2024) (quoting FED. R. EVID. 901(a)). This generally "requires the testimony of a witness familiar with the scene depicted in the photograph who testifies that the photograph fairly and accurately represents the scene." *Id.* (quotation marks and citation omitted). Plaintiff points to no such evidence in the record. Plaintiff's expert does not opine in his report that these photos depict the same area that he examined or that the condition depicted in the photographs is the same condition as existed at the time of Plaintiff's fall. At argument, Plaintiff's counsel stated that her expert could provide that testimony. (Tr. at 29:13–16). That is not correct. First, the expert could not give such testimony because those opinions were not disclosed in his report.[8] Furthermore, the expert examined the

---

[7] Such evidence may be admitted "for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." FED. R. EVID. 407; *see also Brown v. Brown*, 432 A.2d 493, 501 (N.J. 1981) (admitting evidence of subsequent measure because feasibility was disputed). None of those exceptions are implicated here.

[8] *See* FED. R. CIV. P. 26(a), 37(c)(1); *Lipton v. Mountain Creek Resort, Inc.*, No. 13-4866, 2019 WL 4597205, at *7 (D.N.J. Sept. 23, 2019) ("[T]he court generally will not permit an expert to testify beyond the scope of his or her report.").

scene months after Plaintiff's fall and therefore does not have personal knowledge of the precise condition of the parking lot at the time of her fall. (*See* Pl.'s Ex. H, ECF No. 42-13 at 3). Plaintiff's counsel also stated at argument that Plaintiff or her daughter could authenticate the photos. (Tr. at 14:21–23). However, no affidavit from Plaintiff or her daughter attesting that the Google photos are an accurate depiction of the location at the time of her fall was filed with Plaintiff's submissions. The Court is mindful that it "cannot avoid its responsibility to grant … summary judgment because it hypothesizes 'what might have been established' or 'what possibly could be established' at a trial." *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989) (Garth, J., concurring). Nevertheless, the Court will assume, without deciding, that the photographs could be authenticated at trial by Plaintiff's expert, Plaintiff, or her daughter, and further testimony about the reliability of the technology used.[9]

Even considering the photographs, however, no reasonable jury could conclude based on the Google photographs alone that the parking lot was in the same condition at the time they were taken that it was years later at the time of Plaintiff's fall. Indeed, it is common knowledge that over the years the condition of a parking lot including the size of an indentation and steepness of its slope may have changed due to weather and normal use. This would be asking a jury to purely speculate.[10]

---

[9] Plaintiff's counsel further stated at argument that she would subpoena a witness from Google to testify. (Tr. at 14:8-10).

[10] "While we view the facts in the light most favorable to the nonmoving party, conjecture and speculation will not create a genuine issue of material fact sufficient to withstand the grant of summary judgment." *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 328 (3d Cir. 2016) (citation omitted).

In short, Plaintiff cannot show either that Defendant had actual knowledge or that the condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J. STAT. ANN. § 59:4-3.

### C. Palpably Unreasonable

Even assuming Plaintiff established actual notice or constructive notice, the final hurdle that Plaintiff must overcome to hold a public entity liable for negligence under the Tort Claims Act is that Defendant's actions were "palpably unreasonable." *Id.* § 59:4–2. The Court finds that she cannot clear this high bar.

"In order to be palpably unreasonable under New Jersey law, actions must be the result of capricious, arbitrary, whimsical or outrageous decisions of public servants." *Waldorf v. Shuta*, 896 F.2d 723, 738 (3d Cir. 1990) (quotation marks and citation omitted). Put differently, "[p]alpably unreasonable conduct is behavior that is patently unacceptable under any given circumstances such that it is manifest and obvious that no prudent person would approve of its course of action or inaction." *Snead*, 700 F. Supp. 3d at 219 (quotation marks and citation omitted). This generally requires evidence that the defendant received complaints or reports of prior injuries and failed to act, or other facts demonstrating "clearly irresponsible and inadequate measures taken by [public entities] confronting serious dangers on public property." *Fine*, 48 F. Supp. 3d at 783.[11] While this is generally a question for the fact finder, it may also be decided by the court as a matter of law.

---

[11] *See also Snead*, 700 F. Supp. 3d at 220 ("Snead also presents no evidence of similar trips and falls in the area she fell that should have altered Atlantic City to inspect the area more thoroughly."); *Polzo*, 35 A.3d at 668 (citing *Garrison v. Township of Middletown*, 712 A.2d 1101, 1116 (N.J. 1998) (Stein, J., concurring)) (observing that "[t]here were no prior complaints or reports of injuries from the depression on the roadway's shoulder" in holding that the county's actions were not palpably unreasonable). *Cf. Vincitore ex rel. Vincitore v. N.J. Sports & Exposition Auth.*, 777 A.2d 9, 16 (N.J. 2001) (holding, in a case where the plaintiff was struck by a train and killed, that a jury could find the defendant's failure to guard the railroad crossing to be palpably unreasonable because it "knew of the risk, knew that having guards operate the gate eliminated that risk, and knew that people who ordinarily traversed the crossing during the racing season likely would have believed that open gates meant it was safe to proceed").

*See, e.g.*, *Snead*, 700 F. Supp. 3d at 219.

Here, it is undisputed that Bretones, the superintendent, testified that there were no incidents between 2020 and April 2022 to the best of his knowledge. (Pl.'s SOMF, ECF No. 42-1 at ¶ 16). Plaintiff relies on the fact that Bretones said he would have to review the files, (*id.*), but without more this is insufficient to create a genuine dispute, as Plaintiff produces no evidence that contradicts Bretones' sworn testimony. If Plaintiff believed there were files that should have been produced, counsel should have requested them in discovery or filed a motion to compel their production. Furthermore, it is undisputed that "Bretones was not aware of anyone besides the Plaintiff alleging to have fallen in the area discussed as the drop-off and pick-up area" and that "Bretones never received any complaints or reports of the area identified in the parking lot as being unsafe or needing repair." (*Id.* at ¶ 15). In short, Plaintiff offers no evidence that Defendant received complaints or reports of prior injuries or otherwise knew of (and ignored) the risk posed by the parking lot.[12]

Additionally, the Court observes that the danger posed by the indentation in the parking lot in this case is not akin to the patently obvious dangers that existed in the cases where courts allowed the question of whether the public entity's actions were palpably unreasonable to be decided by a fact finder. *See Fine*, 48 F. Supp. 3d at 784 (holding a jury could find it palpably unreasonable to allow "protruding nails on a slippery and steep beach access ramp that barefoot pedestrians, young and old, traversed on a daily basis"); *Vincitore*, 777 A.2d at 16 (unguarded railroad crossing). On

---

[12] Plaintiff again relies on the fact that Defendant subsequently repaired the parking lot as evidence that its actions were palpably unreasonable, (Pl.'s Opp., ECF No. 42-2 at 21–22), but, as explained above, this evidence of a subsequent remedial measure is inadmissible.

15

this record, no reasonable jury could conclude that Defendant's actions were palpably unreasonable.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, (ECF No. 39), is **GRANTED.** An appropriate Order accompanies this Opinion.

*[signature]*

**CHRISTINE P. O'HEARN**
**United States District Judge**